## Case No. 12,029.

### ROMERO et al. v. UNITED STATES.

[Hoff. Land Cas. 219.] [1]

District Court, N. D. California. June Term, 1857.

MEXICAN GRANTS—OCCUPANCY PENDING APPLICATION.

, Where no grant, either perfect or inchoate, was made, nor any promise given that a grant would be made, mere occupation by the petitioner pending his application for the land does not constitute a valid claim.

[This was a claim by Inocencio Romero and others for El Sobrante, being five leagues of land in Contra Costa county. The claim was rejected by the board, and appealed by plaintiffs.]

E. A. Lawrence, for appellants.

P. Della Torre, U. S. Atty., for the United States.

BY THE COURT. It appears from the expediente on file in the archives, that on the eighteenth day of January, 1844, the brothers Romero petitioned the governor in the usual form for a grant of land, being a sobrante lying between the ranchos of Moraga, Pacheco and Welsh. This petition was by a marginal order referred to the honorable secretary for his report. The secretary referred the papers to the first alcalde of San José, with directions to summon Moraga, Pacheco and Welsh, hear their allegations, and return the papers to the office. On the first of February, 1844, the first alcalde reports that the owners of the lands bounded by the tract have been confronted with the petitioners, and that the former are willing and desirous that the land be granted. He adds that it had come to his knowledge that one Francisco Soto claimed the tract some six or seven years ago. But as he had never used or cultivated it, the petioners appeared to him to be entitled to the favor they ask. On the fourth of February, 1844, Manuel Jimeno, the secretary, reports to the governor that, in view of the report of the first alcalde, there would seem to be no obstacle to making the grant. On this report of the secretary, the governor makes the following order: "Let the judge of the proper district take measurement of the unoccupied land that is claimed, in presence of the neighbors, and certify the result, so that it may be granted to the petitioners. Micheltorena." On the twenty-first of March, 1844, the claimants addressed a petition to the governor, representing that, owing to the absence of the owners of the neighboring lands, the judge of the pueblo of San José had been unable to execute the superior order, (above recited) and soliciting that his excellency would grant the tract to them, "either provisionally, or in such a way as he should deem fit," while there was yet time for planting, &c. On this petition Jimeno reports (March 23d, 1844) that the

[1] [Reported by Numa Hubert, Esq., and here reprinted by permission.]

original order should be carried into effect as to the measurement of the land, and that "as soon as that was accomplished, Señor Romero can present himself with Señor Soto, who says he has a right to the same tract." The governor thereupon made the following order: "Let every thing be done agreeably to the foregoing report. Micheltorena." The above documents constitute the whole expediente on file in the archives. From the document produced by the claimants from the files of the alcalde's office, it appears that on the same day, March 23d, 1844, Jimeno communicated to the alcalde the order of the governor that the sobrante solicited by the Romeros should be measured, and that if it should be necessary a measurement of the adjoining ranchos should also be made—with the understanding that those parties who should become "agraciados" should bear the expense. It is evident that up to the date of the last order of Micheltorena no grant of the land had issued. That pursuant to the recommendation of Jimeno, the governor declined to make even a provisional grant as solicited, and that final action in the matter was deferred until a measurement should be made, and until Romero and Soto should present themselves. Jimeno does not seem to have finally adopted the opinion of the alcalde that Soto had forfeited his rights to the land, for he recommends to the governor, as we have seen, that the land should be measured without delay, and that then "Romero should present himself, joined with Señor Soto, who says he has a right to the same land." In this recommendation the governor concurs. There is certainly nothing in these proceedings which indicate that the governor had finally determined to grant the land, though it is evident that he regarded the application with favor; still less can any of the orders made by him be construed to import a present grant. On the contrary, it is clear that the governor refuses to make even a provisional grant, but insists that a measurement shall first be made, and then that Romero and Soto shall appear before him, evidently with the view of determining the rights of the latter.

The subsequent proceedings, as shown by documents exhibited by the claimants, confirm this view. On the fifteenth of January, 1847, Romero and Garcia, the present claimants, appeared before John Burton, the alcalde of San José, and executed a paper in the presence of the alcalde and two witnesses, reciting a sale by Romero to Garcia of one-half the land, and stipulating that both parties should remain subject to the final result, "if the government grant it in ownership." And if the contrary should be "the case, then Garcia should lose equally with Romero, without any right to reclaim the consideration paid." This paper is signed by the parties, the alcalde and the witnesses. On the twenty-eighth of May, 1847, José Romero addressed a petition to John Burton, alcalde of San José, representing that as early as 1844, an order from the

former government had been sent to the alcalde's court requiring a measurement of the land called "Juntas;" that such measurement had not yet been made. He therefore solicits the alcalde to give him a testimonial of the reports which in the year 1844 were sent to the government, so "that we can be granted said land." The alcalde in a marginal order directs that the lands should be measured according to the original order of the supreme government. In the margin of the order transmitted by Jimeno, under date of March 23d, 1844, the alcalde writes: "Be it done accordingly, on the ninth of April, 1847. The interested parties will proceed to take possession of the mentioned land according to the order of the government. I further order, that in case any bordering land owner demand it, a measurement of his land be ordered. John Burton, J. P." It appears, moreover, that about two months before the date of their last petition, viz: on the thirty-first of March, 1847, José Romero had addressed a petition to the same alcalde, representing that some years before he had solicited a piece of land in the Cañada de San Ramon, and bordering upon lands of Don M. Castro, and that his excellency had ordered the lands of Castro to be measured, which had never been done. The petitioners further stated that they were two brothers, with a numerous family, and were without any piece of land whatever to raise cattle; they therefore begged the alcalde to provide for them as soon as possible, that they might retain and locate their stock. The alcalde on the fifth of April orders that the fulfillment of the superior order should be at once proceeded to. The entry in the marginal order transmitted by Jimeno was made on the Romeros' petition of the twenty-third of March, and not on that of the twenty-eighth of May, above referred to; for it directs the measurement to be proceeded to on the ninth of April. And, finally, on the twenty-seventh of December, 1847, K. H. Dimmick, then alcalde, makes an order in which, after reciting that disputes as to the boundaries existed between the Romeros and Domingo Peralta, he directs that the boundaries be established and adjusted in the manner specified in the order of the governor, dated twenty-third of March, 1844.

I have stated the contents of these various documents with some particularity, because an attempt has been made since the rejection of the claim by the board, to show by parol evidence that a final grant issued to the Romeros, which has been lost. We have seen that the last document in the expediente is the order of the governor of the twenty-third of March, 1844, adopting Jimeno's recommendation that a measurement should be made before issuing the final grant, or even a provisional one as solicited by Romero; and even then it does not seem that the grant was certainly to be made, for Romero and Soto were to "present themselves," evidently for the purpose of enabling the governor to

ascertain their respective rights. Nothing further seems to have been done, either by the government or the petitioners, until 1847. On the thirty-first of March of that year we find the Romeros representing to the alcalde that the governor had some years before ordered the land to be measured, which had not been done; and that they were without any piece of land whatever, and they beg the alcalde to provide for them. The alcalde thereupon directs that the superior order of March 23d, 1844, be proceeded to. On the twenty-eighth of May, 1847, the Romeros again petition the alcalde, representing that as early as 1844, the governor had sent to the alcalde's court an order requiring a measurement of the land; they therefore ask a testimonial of the reports and orders in his office, "so that we may be granted the land." The alcalde again directs the superior order of March 23d, 1844, to be complied with; and on the day following a declaration is made before the alcalde by Antonio M. Pico, that Don J. Moraga and Don L. Pacheco, the colindantes, had declared that for their parts the surplus of land which does not belong to them "could be granted to the Romeros." And, finally, the deed from Romero to Garcia of January 15th, 1847, expressly stipulates that both the parties to it should remain subject to the final result, "if the government grant it in ownership, and if the contrary should be the case, then Garcia should lose equally with Romero without reclamation."

These documents appear to me to establish beyond doubt that all action of the government on the application of the Romeros terminated with the order of March 23d, 1844, directing the measurement as an indispensable preliminary to a grant, either final or provisional. That during the year 1847, the petitioners made several attempts to have that measurement effected, but apparently without success; and that up to December, 1847, neither they or any one else pretended that the order of March 23d, 1844, was not the last act of the government in the premises.

The parol testimony offered to prove that a grant issued will be briefly adverted to. C. Brown swears that the Romeros have lived on the rancho since 1840, and that he always understood they had a grant. He does not pretend to have seen it. James M. Tice swears that he has searched for the title papers, but has been unable to find them. J. J. P. Mesa saw a bundle of papers in Romero's hands on his return from Monterey, in 1844. The bundle was not opened, but Romero said they were his title papers. He subsequently saw Micheltorena's order for the measurement of the land. He does not pretend to have seen any grant. It is to be observed that Mesa was examined before the board, and did not mention this circumstance; and that he can neither read or write. Inocencio Romero, who disclaims

any present interest in the land, swears that he had a grant; that he gave it to Mr. Tingley to be presented to the board, and that since then he has not seen it. He also states that the grant was made by Micheltorena a short time after he arrived in the country, and that Arce, who was then his secretary, delivered it to him. The expediente however shows that Jimeno was the secretary, at least until March 23d, 1844. And as it is clear that at that date the grant was suspended until a measurement should be made, the title papers seen by Mesa in the hands of Romero on his return from Monterey in 1844, must have been only the papers now produced. The testimony of Mr. G. B. Tingley is the only evidence in the cause which approaches proof that a grant issued. This witness swears that on the trial of a suit between Domingo Peralta and the Romeros, a grant from Micheltorena to the latter was produced in evidence; that the petition was for a sobrante; that the signatures were genuine; and that one Sandford took the papers, and he has never seen them since. On his cross examination he states that the papers produced were the original petition, and the marginal order of reference, an information signed by A. M. Pico, then a decree of concession, and finally a title in form with a condition that the grant should not interfere with the adjoining grants.

If these papers were produced, they must all, with the exception of the grant, have been procured from the archives; for the petition, the informes, and the decree of concession form part of the expediente which remains on file. That expediente, is in evidence in this cause, and contains no decree of concession whatever, nor any draft or "borrador" of the formal title delivered to the party, as is almost invariably the case where such a document issued; on the contrary, the last order of the governor in effect refuses, as we have seen, to grant the petition for even a provisional title until a measurement was made, which clearly was not done until after December, 1847, if at all. Besides, if all these papers were procured from the archives and were delivered to Sandford, how does it happen that only a part of them were restored to the archives, and are now produced? José Ramon Mesa, a witness produced on the part of the United States, testifies that he was present at the trial of the suit referred to by Mr. Tingley; that no formal title was produced by the Romeros, but only a provisional license to occupy, subject to the boundaries of the neighboring proprietors, during the pendency of the proceedings to obtain a title. The witness further swore, that he heard Inocencio Romero state to Domingo Peralta, in reply to an inquiry as to what title he had, that he had no title; that all he had was a provisional license. That on several occasions he heard Garcia say that he had no title; and that he had intended to take steps

to get one, but that all he had was a "provisional license." This provisional license is in all probability the order made by John Burton, justice of the peace, in April, 1847, on the margin of the governor's order of March 23d, 1844, for the measurement of the land, and was in compliance with Romero's petition to him of the thirty-first of March, 1847. The justice of the peace directs that "the interested party will proceed to take possession of the land according to the order of the government," &c. As a copy of Jimeno's order with this marginal entry of Burton's appears to have been furnished to Romero, and by him sent to Garcia, it is in all probability the "license" referred to. It will not be pretended that any rights could be conferred by such an order of an American justice of the peace in April, 1847. The record of the suit between Peralta and the Romeros has been produced. It contains no evidence whatever even tending to show that a grant was produced at the trial. Antonio M. Pico, a witness produced by the claimants, swears that he received an order from the governor to put the coterminous neighbors, Pacheco and Moraga, into possession of their land, and to measure the same for the purpose of separating them from those of the Romeros; that he was directed by the same order to put the Romeros in possession of the overplus; that he summoned the colindantes, but they did not appear; that he did not then execute the order, but repeated the summons to them; that the Romeros made a complaint to the governor, and he, the witness, received from the latter a new order to carry the former into effect, upon which he told the Romeros to go there—which they did in 1844. This witness explicitly states that no title to the land in favor of the Romeros was ever exhibited to him. The orders referred to by Pico are obviously those contained in the expediente. The first order did not, as he supposes, direct him to put the Romeros in possession, but only to measure the land and certify the result, "so that it might be granted." Romero's complaint or petition to the governor, stating the failure of the alcalde to measure the land, and asking for a provisional grant, we also find in the expediente, and also all the second order of the governor, which, like the former, only directs the measurement of the land—the governor having, as we have seen, adopted Jimeno's recommendation that the land should be measured, and Soto and Romero should present themselves before any grant should issue.

On the parol proof alone I should come to the conclusion that Mr. Tingley is mistaken in supposing that a grant for the land was ever produced. But the evidence afforded not only by the expediente but by the repeated declarations of the Romeros themselves in their various petitions and in the conveyance to Garcia, removes every possible doubt on the question. The facts of the case are

unmistakable. The Romeros solicited land which the governor was disposed to grant. He directed a measurement preparatory to making the grant, and this measurement never was effected. I cannot perceive how this court can recognize these proceedings as giving any title to the land. It may be admitted that in 1844 they went upon the land, as stated by Pico—though if so, it is singular that John Burton, alcalde, should in April, 1847, have ordered "the interested parties to proceed to, take possession of the mentioned lands according to the order of the government." But this occupation, not authorized, so far as appears, by government, and only made in pursuance of a verbal permission of Pico, and without the measurement of the land as required by both orders of Micheltorena, can hardly be deemed to have conferred any title, either legal or equitable, upon the claimants. The case is, perhaps, a hard one; for there seems no reason to suppose that the grant would have been refused, if the measurement had been made, and Soto's rights had been found to have been forfeited. But no grant, either perfect or inchoate, was made, nor any promise given that one should be made. The petitions were favorably received, a provisional grant refused, and a measurement directed. There the action of the government ended; and certainly such proceedings did not confer such a right of property in the land as this court can·recognize. The claim must be rejected.

[NOTE. Motion was subsequently made by the petitioners to open the decree for rehearing, and for leave· to take further testimony. The motion was granted, and additional evidence was accordingly introduced, and the cause again fully heard. The court reaffirmed the former decree: Case unreported. The petitioners thereupon appealed to the supreme court, where the decree of the district court was affirmed. 1 Wall. (68 U. S.) 721.]